The first case we'll hear today is Watters v. Board of School Directors of the City of Scranton et al. And that's number 19-3061. We welcome counsel. Happy to have you on this interesting medium at this interesting time. We will hear from appellant first, Mr. Gelman. Thank you, Your Honor. May it please the court. Good morning. My name is Mark Gelman. I represent the plaintiff appellants in this matter, schoolteachers Joshua Watters, Molly Popish, and Laurie Burdette. I would request three minutes for rebuttal, Your Honor, if I may. That'll be granted. And I'll be keeping time. I hope you will, too. I'll let you know when your is done, okay? Yes. You may proceed. Thank you. This court has stated that the purpose of the contracts clause is to allow the parties to a contract to agree upon their respective rights and obligations, and then to protect those expectations from legislative interference. And it is the nature of these expectations that lie at the heart of the incident dispute, and indeed of the contracts clause itself. There are, as the court's aware, effectively three elements in any contracts clause analysis. One, whether there is a contractual relationship. That's not an issue in this case. Second, whether the change in law has impaired that relationship. And that does not appear to be a matter in dispute either. So what we're left with is a close examination of the third element, and that is whether the impairment is substantial. Now, in order to determine whether the impairment is substantial, the court looks at two factors. Well, counsel, perhaps, I mean, let's not put the cart before the horse. Does section 1983 confer a right of action under the contract clause for your clients? Yes, it does, your honor. As you're aware, there is a circuit split on the issue, and Judge Mariani and the district court agreed with our position, effectively, that the Ninth Circuit and what we suggest, I apologize, is the language of the Higgins court in the Supreme Court that Carter should be read narrowly, and that the contract clause does give rise to a violation. Wasn't Higgins a commerce clause case? Yes, it was, and that's why it's not binding precedent, your honor. However, it appears our interpretation, as well as the Santa Ana court in the Ninth, is that the discussion, if you will, perhaps dicta in the Higgins court, in the context of the commerce clause, conferred or indeed suggested that the reasoning would apply to individual rights. So are you saying that Carter versus Greenhow is now not good law? No, your honor, just that for purposes of this issue, it should be read more narrowly, so as not to preclude individual rights of action under the contracts clause. Yes, your honor. Okay, but couldn't Carter versus Greenhow be read to say that you should have the ability to challenge judicially the action taken by the Pennsylvania General Assembly under Act 55? Isn't that in effect what Carter versus Greenhow held way back when? We believe that that's more expansive interpretation of Carter, not one that should be adopted by this court as the district court held. That's too broad a reading, and Act 55 would not, a judicial challenge or a constitutional challenge to Act 55 under the cause of action brought here, shouldn't fall into the purview or the restrictions set forth in Carter. It's really two sides of the coin, your honor, to be quite frank. You've got the fourth and the sixth and the ninth and pick your poison. We, of course, you know which side of the coin you're on. You're going to come down on the Santa Ana side, is what you're saying. Yes, that's correct, your honor. You're going to come down on one side. Again, that's why the Higgins, if you want the U.S. Supreme Court to serve as a tiebreaker, if you will, which it so often does in these matters, we believe that the language in Higgins would provide the finger on the scale, if you will, when weighing Crosby-Comminski versus Santa Ana, and that's the position we've taken. Let me jump in on this 1983 question. The same day that Carter was decided, there was another case, Poindexter against Greenhow. Same justice authored that case. Are you conversant with that one? I'm not, your honor. Okay. Yeah, I apologize. So, well, amongst, obviously, your position is that you, that Section 1983 does confer private right of action. Which of the circuits would you suggest we go with if we have to adopt a rationale for this? The rationale set forth by the Ninth Circuit in Santa Ana we feel should serve as the model for this circuit in viewing such claims. Okay. So, if I may, if there are no additional questions in that matter, I'd like to kind of gear back to the Contracts Clause Analysis. And what is really the determinative issue here is whether or not there is a substantial impairment. The two factors that we believe are right for this court are whether the impairment was a central undertaking. Effectively, did the abridged right induce the parties to enter into the contract in the first place? And secondly, was the change in law foreseeable? With regard to the first element, we're dealing with a tenure contract. The concept of tenure and what it means to teachers, what it means to these public employees, and how it's handled by these parties permeates throughout every, you know, every crevice of this case. It is really the essence of this case, and that's with respect to job security and job stability, and a bargain, if you will, between the public employer and the public employee, whereby the public employee would enter into a tenure contract with the understanding and the expectation that he or she would be accepting effectively a lower wage, reduced compensation for commensurate employees with comparable education in return for certain benefits, not the least of which is job security, particularly in times of economic despair. The flip side of that bargain is that the school district, the public employer, gets a highly educated, skilled workforce for less money, you know, on the cheap, if you will. Your adversary spent a lot of her brief talking about how tenure in Pennsylvania, probably elsewhere, is a matter of quote-unquote legislative grace. It's not just a regular contract because it incorporates an entire code. Your reply brief, though, says that we shouldn't resort to that. It doesn't matter how the Pennsylvania Supreme Court and others have construed that whole system. I'm interested to find out why. You know, the issue of legislative grace or as Appelli identified these contracts as qualified contracts, we believe, though, that that line of thought is in some respect a red herring. It is undeniable that these tenure contracts are a creature of the code, that the school districts do not have the authority to enter into tenure contracts without this legislative grant, you know, as set forth in the code. That is undeniable and undisputed. Nevertheless, we take the position that it is ultimately a distinction without a difference. At the end of the day, the net result, if you will, is that we are dealing with tenure contract. How we got there, we believe, for purposes of a substantial amount of this, is less important, if not important at all. Now, with regard to the state court cases, particularly those cited in Appelli's brief, the courts didn't necessarily dismiss any concern that a challenge may take place. The primary state court cases relied upon by Appelli's, we're dealing with Malone and we're dealing with Walsh. Both of those cases predated modern Supreme Court jurisprudence concerning the contracts clause. There's no substantial impairment analysis. There's no Malone and Walsh really don't lend. I don't think they were contract clause cases, but don't they give us a helpful background about the nature of tenure contracts in Pennsylvania? Certainly. Absolutely. And that background is helpful, but I believe in no way dispositive or even relatively persuasive, if I will, your honor. They certainly, you know, they can't be disregarded with regard to the helpful discussion as far as how tenure contracts came to be. No doubt about it, but we're dealing with regard to how helpful Mr. Gelman, let me ask you this question. Yes. Assume we agree with you and we conclude that Act 55 did substantially impair your client's contractual relationship with the Scranton School Board. As a next step or a last step in our analysis, don't we need to then determine whether Act 55 was drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose? Yes, your honor. You're absolutely correct on the third leg of effectively the final step in the contracts clause analysis. Okay. So would you address that part for us as to why what the legislature did did not advance that significant and legitimate public purpose? Certainly, your honor. But I think it's important for me to clarify the position that we are taking. This is not an attack upon Act 55. And we don't portend to suggest that Act 55, that the legislator has enacted legislation that is unconstitutional in violation of the contract clause. This is not a facial challenge of Act 55. So therefore, there's no need for me to show that there was no legitimate public purpose in the implementation of Act 55 in the manner in which you framed your question, your honor. Well, but you're arguing clearly that Act 55 violates the contract clause as applied to your clients. That is correct, your honor. So you still need to take this last step. Oh, absolutely. Certainly, your honor. And I'll do so. I'll just reframe it in a different focus. The implementation and application of Act 55 by the school district to these teachers is unconstitutional. So I think that's important. The clarification I made is important with regard to this analysis, because we don't suggest that Act 55 doesn't serve a legitimate purpose. And we're merely challenging the legislative action as applied. So we don't believe that that analysis really poses any impediment to our position in that it does, Act 55 clearly does serve a legitimate purpose. And Act 55 in and of itself, and this is not the thrust of our analysis, is reasonable and proper in light of that purpose. What is not reasonable and proper in light of the overall purpose of Act 55 is the manner in which the school board and the school district is applying it. So I know I'm creating a bit of a hybrid here, a hybrid analysis in that the legitimate purpose of Act 55 is what we're considering, even though that's the legislature that implemented it. But when we're looking as to whether it is in light of the circumstances, we're looking at the propriety of the application of Act 55. So we suggest... Are we able to do that at this posture, or does it require the development of a factual record? Well, Your Honor, it appears as I know we're here on a 12B6 dismissal. There don't appear to be any facts in feud or any facts which would ultimately lend themselves to consideration of these issues. We don't believe... We haven't alleged any particular facts in defending the 12B6 at the lower court level. I guess what I'm thinking is if the reason for the action is financial difficulty, does someone need to look at the nature of the financial difficulty, the foreseeability of it, and so on, in order to determine whether it's an appropriate and reasonable pursuit of a legitimate public purpose, or is it something we can just do on the papers? Yeah, I believe the latter, Your Honor, in that if we're dealing with financial difficulties of school districts, something that is commonplace, it's historical, and it's widespread. I don't believe that there is anything that could be developed in this particular record that would lend any insight to the fact that the district is prime poor and wants to save money. As far as foreseeability, that is the district... What's contained in the record is the resolution at issue, the resolution which was effectively the tool by which the furloughs, what we believe to be the improper furloughs were made. The numbers are there. The numbers are in the record in terms of the cost savings that the district claims it would achieve through the furloughs or through the implementation of its budgetary ordinance at issue. Your time is up, but I did have actually a question for you. I noticed in your brief early on, obviously there were two reasons, the A5 reason, which implicates Act 55, and the A2 reason. And you said the A2 was told. Is there a tolling agreement or something in place? I wondered what you meant by that. Yes, there's a tolling agreement between the parties until this matter is resolved in this court. If and when appropriate, the parties will return to state court to litigate the A2 matter. Something to think about, nobody raised it, but can we really give relief in this case? I wonder if there's a standing issue here. Even if we totally agree with you, there may be an alternate basis where this whole thing is torpedoed. It's just something to think about. But another thing I want you to think about while you're sitting down, one of the plaintiffs here, Lori Burdette, something else not covered in the briefs, it looks like she came aboard in 2015, three years means September of 2018, I believe, that she got tenure and signed her contract. But Act 55 went to place in 2017. So I'm wondering, is there a cause of action at all for Lori Burdette? Just something to look at maybe. Judge Fischer, Judge Porter, do you have anything more you want to ask right now? No, I'm good. The only question I would like to ask Mr. Gilman is, you know, if we affirm the district court, this is going to send this case back to state court on the state law questions. You initially filed this case in state court. You seem now that you want the federal courts to decide this question. Why wouldn't having it go back to state court to really put you in the position where you wanted to be in the first place? Well, we believe the case ultimately, with the help of the school district, ended up where it belonged. These constitutional issues, these important constitutional issues are obviously not just best addressed, but must addressed by this court. Different relief sought, different considerations. So in time, the state court considerations are obviously quite important, and they will be. We're hoping to be successful here to the point where we get to state court. But we need these important constitutional questions addressed, and here we are. All right. Thank you, counsel. We'll hear from your adversary. Sorry, your honors. Just a meeting, and I'm setting my timer if you would just allow me to do that. Thank you. Good morning. May it please the court. My name is Jennifer Manikin. I am here on behalf of a police, the school district of the city of Scranton and the board of school directors of the city of Scranton. I'd like to address some of the points that panel had asked Mr. Gellman about, starting with the 1983, whether there is a viable action for a violation of the contract clause. The district's position is that there isn't, that this court should adopt the positions of both the Fourth and Sixth Circuits in holding that there is no private right of action for 1983, under 1983, for a contracts clause violation. Carter v. Greenhow, as set forth by the Sixth Circuit in Kaminsky, is still technically good law, and that held that there wasn't a private right of action. I'm aware of Dennis v. Higgins in the footnote where it explained it, where it seemed to say that that would be narrowly interpreted. But if we do look at the decision by the Kaminsky court in the Sixth Circuit, which was more recent than Santa Anna, Santa Anna was in 2003, Kaminsky in 2017, and Crosby in the Fourth Circuit in 2011, held that technically Carter v. Greenhow is still good law. And if it's still good law, there really isn't a cause of action under 1983 for a contract clause. But Carter v. Greenhow doesn't say there's no 1983 cause of action. They just said that Carter hadn't properly brought a cause of action. And isn't your statement that there's no 1983 cause of action perhaps equally too broad? As I asked Mr. Gilman earlier, couldn't they have brought an action to at least say we should have a right to judicial determination as to whether Act 55 was constitutional as applied to our clients? You're correct, Judge Fischer, that there was a discussion in Carter v. Greenhow about how it was pled, and that really was part of the underlying basis. I think everyone in this discussion will agree there is a circuit split. The law seems to be unclear. I don't think it is necessarily clear one way or the other. I just, the district's position is that the Third Circuit should follow the positions of the Fourth and Sixth Circuits and allow the Supreme Court to definitively rule on it if they so choose, given that, although Carter v. Greenhow is old, I believe- I want to interject here a second. I don't know. I'm just looking at the screen here, and it looks from my screen- Oh, we lost Judge Shigaris. We did. So why don't we pause for a second until we can be sure that Judge Shigaris, we know he's with us from New Jersey. We want to have him with us on Zoom. Yes, he did. This is Greg. Sorry, Judge. It looks like he did pop off. So just bear with me a moment. I'm getting Judge Shigaris back on. He lost internet connection and it dropped him, but we're getting him back on now. Thanks, Lisa. That shows you that Pittsburgh has better functionality than New Jersey does. Go Pennsylvania, Judge Fischer. Greg, he's in the waiting room. Can you let him in? Yes. Yeah, he is. He's letting you in right now. There you go. Thank you. All right, Judge. There you go. So sorry. Judge, we paused the argument when you disappeared from our view. All of a sudden, my internet- I'm in the courthouse. All of a sudden, the internet went dead. But I'm okay now. I'm so sorry, counsel, and sorry to my colleagues as well. But I'm sorry. You can go ahead. I think I threw you off a little bit there. That's perfectly fine, Your Honor. Would you like me to repeat? I believe we were just briefed. I don't know where. I'm sorry. I was focused. No, no, no. I actually- it hasn't been that long since I'm off, I don't think. So if you- we gave your adversary a little bit more time. So if you want to get into- we were talking about whether Section 1983 confers a private right of action. And you had suggested two of the circuits, and that's about all. So maybe if you could just start there. Sure. I believe Judge Fisher did ask a question about whether it could be interpreted, obviously, the other way as well. And I did recognize that there's a circuit split on this issue and that the law is somewhat unclear. And really, I believe the Supreme Court can make it given that Carter v. Greenhow is its president. I don't believe Dennis v. Higgins necessarily overturns Carter v. Greenhow. And I'm not sure- No, but that's a question that I have. What effect does the Higgins case have on the Carter case, if any? Well, I think the Sixth Circuit addressed that and said it doesn't overrule Carter v. Greenhow. It might provide some discussion on it. But given that, I believe Dennis v. Higgins was a correct- Really, it doesn't overrule Supreme Court precedent. I believe it was the Sixth Circuit in Kaminsky that said if the Supreme Court wants to overrule its precedent, it can do that. It didn't do that in Dennis v. Higgins, which I believe is probably why we now have the circuit split. I asked your colleague, so I'll ask you if you're familiar with the Poindexter case. I'm not, Your Honor. I was aware there was a companion case in Greenhow, but I'm not familiar. I think it involves the same thing, tax coupons and payments, but I'm not aware of the import of it or its holding. I apologize. You have to keep in mind, Judge Porter likes to read cases from 1885 as his hobby, so you can hardly blame him. I'm just kidding, of course. Understood. I'll move to the substance of this case. The district's position is the contract and issue that we're talking about here, when we say a tenure contract, that's a qualified contract or obligation created by the legislature. I understand and I recognize, as does the district, that this court determines for itself as a federal court whether there's a but to completely disregard Pennsylvania law on that, I would submit it's probably not the best course, and it does provide some guidance. As I stated in my brief, it is instructive. Tenure in Pennsylvania, this contract, is a matter of legislative grace, but for the legislature passing the public school code, you cannot have a tenure contract for public employment in Pennsylvania. I think that's critically important because the legislature chose to give tenure contracts to teachers, but was very, very specific in the terms of those contracts. In the public school code, it's defined after three years of service, a teacher is a professional employee, that's how they're defined in the code, is to get a tenure contract, the terms of which are mandated by the public school code. This isn't just a mandatory language of saying shall, the language says shall contain only. The language of a tenure contract is completely defined by statute and limited to only the language of the statute. In that contract contained in the public school code, that's section 1121C, it says that this contract will subject to the provisions of the public school code and the amendments thereto. What are those amendments? It's a definite article when it says the amendments thereto, what are those amendments? I think they could be any amendments to the public school code made by the legislature. But it's not written that way, is it? They could have said any amendments thereto, or any future amendments, they said the amendments thereto, why isn't it limited? I think that's because of how the tenure contracts are affirmed, and I believe the code even says they can be renewed year after year. So perhaps of saying any amendments thereto, the idea being of pointing it out to the amendments thereto, suggested that it would always be applied to the amendments of the code as they arise. More importantly, I think the next sentence is also critically important of these contracts, that says it is agreed to between the parties that none of the provisions of this act may be waived orally or in writing. If there was any uncertainty of whether the amendments apply, I would think that in the legislature saying you have to include that language in this contract, they were saying you're going to be bound by this act, whatever it is. I think Judge Porter brings up a really good point. And why is it not permissible to read the reservation clause as setting the amendments? 1964 or something was the most recent amendment before Act 55. Why isn't it permissible that the act and its amendment, at least as of 1964, be read into a contract for these plaintiffs when they sign the contract? I mean, is there anything really pointing to the future? Well, our position is that referring to the amendments is pointing to the future. And in the nature of public education in the Commonwealth, which is extensively regulated and created in existence because of the acts of the legislature itself, that that suggests the future amendment that the legislature is going to retain control over how public education operates in the Commonwealth of Pennsylvania. I don't think the legislature... Is there a limiting principle here, though, counsel? I mean, I said, is there a limiting principle here, counsel? I mean, what if the legislature says no more tenure for teachers? Can they do that? And then would no teacher have tenure then in Pennsylvania? Well, I think yes, they can do that. I think there'd be an argument that that would be some kind of a much more different change to the scheme that would follow in other cases that suggest that when you completely change the system or eliminate the system, that might be more of what you're considering a substantial impairment of the contractual interest. Versus in this case, there's always been the ability for a district to furlough or suspend a professional employee. Tenure's not absolute. There's always been reasons whereby a teacher can be suspended. The General Assembly would have the right to say whether or not tenure should be the public policy of Pennsylvania. And if they eliminate it, it seems to me that under the wording of the school code, tenure would no longer exist. I would agree with that. I believe that in this case, in dealing with public education, that is within the province of the legislature, and that they have afforded tenure, and I would be very surprised if they ever did that, but that they could take it away. And I think this section, and I will say this so that I don't forget to, the suspensions were under two provisions, A2 and A5. A2 preexisted when any of these teachers entered into their tenure contracts. So, the A2 provision, whether or not that changed, that didn't change. That wasn't part of Act 55. The economic reasons was part of Act 55. And I think, sorry. In your view, is tenure a contractual right? I think tenure can be a contractual right, but I think it's a qualified contractual right, solely defined by the legislature's decision to allow it. I don't believe that these teachers have a right to unfettered tenure in the sense of what we think of, that you can't be eliminated from your position for any reason. That's never been the case for a professional employee in a school district, that you've always been able to be suspended for a load. What if one of your neighboring school districts up there in the Northeast said, we want to attract the best teachers in Northeastern Pennsylvania, and we're going to negotiate separately with our teachers, and we're going to tell them that anybody who has taught successfully and has met our expectations after two years has tenure. And we're going to get all the good teachers to come to our district. Could a district do that under the current public school code? No. No, Your Honor. I believe that would be barred. No. And I think in Pennsylvania law, says those kind of contracts are nullity. They're void. Whether it's a district or whether, frankly, it's another municipality. There's case law about that happening with, I think it was a roadmaster, a borough manager, where even if both sides agree to that, it's a nullity because you can only have tenure in public employment if it's statutorily authorized. In this case, it is, but it's limited to those statutory terms of the public school code. Go ahead. Go ahead. There's language in section 1124 F2. It says a provision in any contract in effect on the effective date of these amendments that prohibits the suspension of professional employees for economic reasons in conflict with this section shall be discontinued in any new or renewed contract or agreement. How do you apply that provision in this case? I'm aware of that provision. I think they're applying to the collective bargaining agreement type contracts, not to specific tenure contracts as the language of the tenure contracts are defined by 1121 C. That language hasn't changed. So, where it does say that in a collective bargaining agreement or other similar employment contract, if the collective bargaining agreement is referenced in some other way or some kind of contract between the union or federation, whatever bargaining unit exists, I believe that's what that reference is. I don't think it's referencing tenure contracts. In 2018, the Supreme Court of the United States decided the case is Sveen v. Mellon. How does that impact our consideration and does it change slightly the test on substantial impairment? Well, I think Sveen v. Mellon still spoke as to the three steps that we're talking about of whether or not there's a substantial impairment and then if it serves a legitimate public purpose. I do believe that, I mean, there was a dissent in that case, obviously, but I think the idea being that, sorry, Your Honor, I'm trying to recall, there was a slight distinction in that there was a discussion of whether or not having the legitimate public purpose could affect it in the dissent, but I think it still follows that those three elements of, one, there has to be the substantial impairment, and two, if there is a substantial impairment, even though the contract clause says that no state may pass a law that impairs the obligation of contracts, if there is a substantial impairment, if there's that legitimate public purpose, that would forego any violation. Counsel, can I, your adversary relied rather extensively, I think, in his briefs on in-rate workers' comp refund, the 8th Circuit 1995 case, which I may support his argument about permitting retroactive effect and essentially deeming sort of all rights or obligations illusory. Why shouldn't we rely on that case? Well, it's an 8th Circuit case, Your Honor. Of course, but, you know, okay. I'm sorry, sir. Of course, in-rate workers' compensation, I think, is distinguishable. This is a unique situation here where in-rate workers' compensation did not deal with a situation where the contractual right itself was created by the reinsurance premiums. I believe that was the case that dealt with reinsurance premiums for workers' compensation funds that were being returned to the insurance carriers rather than to the self-insured employers and employers who paid it. So I think it's distinguishable in the sense of here what we have is the legislature, the Pennsylvania legislature, statutorily authorized tenure contracts and defined what would be included in them. They limited that language, and I think the fact that it's a qualified contract, as Pennsylvania courts have identified, is distinguishable from that 8th Circuit case and similarly the Washington case that dealt with the bonds and the nuclear plants being built, which is escaping me now. I apologize. Well, counsel, I think we can all understand that it's factually distinguishable, but what about its rationale? Well, I think the difference is how the contractual right is created. The rationale of saying that there's no retroactive application whatsoever because of reservation language in those agreements is different than a situation here where the legislature actually had to statutorily authorize the language of the contract and said it's going to remain subject to the public school code and it's going to, you cannot waive any provisions of the public school code and mandated that that is the only language you can use in a tenure contract. I think that distinction, a factual distinction, but also in its application shows that the retroactive component was considered by the legislature and said they're going to retain the right and the purview over public education in the Commonwealth, which would include contracts of its professional employees. Could I just ask you as well, and I'll give my colleagues a chance to ask any other questions they may have, your adversary mentioned the So, Judge Mariani and the district court declined to address the supplemental state claims. Two of those state claims were local agency law appeals that challenged the actions of the district. I don't believe it's specifically related to A2 in the sense of this, that I think were two, there were two local agency law appeals. The district court did not address those, so there would still be an available agency law, local agency law appeal and the parties have agreed in writing, although it may have been told anyways, but have agreed that if the appellants decide to pursue those appeals, that they would be able to do so in state court, given that the district court didn't address that. It doesn't, we're not, my understanding of the tolling agreement is it doesn't reserve any evaluation of the constitutionality of A2 necessarily. It proceeds under a different procedural mechanism, the local agency law appeal, which I believe also has a much more stringent standard of review than a de novo review of a 12B6 motion. All right, thank you. Judge Porter, Judge Fisher, do you have anything more to ask? No, sir. In your, in your, or in your brief, you seem to rely heavily on the Pennsylvania Supreme Court's decision in the Teacher Tenure Act cases, but didn't that, didn't that decision really concern the state's constitutional contracts clause, not the federal one? Yes, your honor, I agree that it's Pennsylvania law. Don't we have a, yeah, don't we have a different question before us here? Well, I think the question is whether it violates the contract clause of the U.S. Constitution, and like many other constitutional questions, questions relating to the U.S. Constitution and Pennsylvania Constitution are often analyzed in the same fashion. I think Pennsylvania law, I understand it is not controlling or determinative in the federal court's determination of violation of the contracts clause, but I think it's persuasive and instructive to show how the Pennsylvania courts have reviewed it and evaluated something that has been, you know, a discussion since back in 1937 with those tenure act cases, especially where the it referenced those future amendments thereto or the amendments thereto and held that the, you know, the legislature wasn't relinquishing its control over teachers' tenure, basically. Thank you. Okay, thank you, counsel, and we'll hear rebuttal. Thank you, your honors. I think an issue that must be revisited because it serves as kind of the core of what it deems a qualified contract or the notion of legislative grace, and there was a suggestion made or I believe implied by a question posed to counsel that we, appellants, somehow are suggesting that Pennsylvania law be disregarded and creating or perhaps suggesting there is a conceded, there is no dispute that the, as we covered in my opening remarks, the contracts would not or could not exist but for the enabling language in the school code, but that does not, and that's a fact, but that does not necessarily render the contracts any less valuable, any less enforceable, or any more illusory. Because a contract has been labeled qualified, that simply, by the state courts, you know, early on before modern contract clause jurisprudence was established by the U.S. Supreme Court, does not mean that these contracts may be disregarded or, more importantly, and to the point, that those party to the contracts may have their federal constitutional rights infringed upon. As Judge Fisher noted, these are federal, and to be considered by the federal courts. We don't believe that there is necessarily a choice between adhering to and following the rationale espoused by the 8th Circuit in or the 9th Circuit in Continental Illinois National Bank. We do believe that the rationale provided in those determinations, specifically with respect to retroactive versus prospective modifications and application, are wholly on point and should be seriously considered. It goes to the, not just the fundamental fairness, I think, that your honors understand our position with regard to honoring these tenure rights, but these established guarantees under the U.S. Constitution in the Contracts Clause. The subtext of Appelli's position seems to be, we can violate your constitutional rights because this is a qualified contract, or by deign of the legislative grace of the legislature by way of the school code, and that is clearly not just, you know, inequitable and unfair, but drives at the heart of the Contracts Clause and is simply an untenable, unsupportable position. When the statute says that the tenure contracts are subject to the provisions of the public school code of 1949 and the amendments thereto, how do you interpret that in terms of its retroactive or prospective application? All right. I will admit, your honor, that you raised in your questioning of counsel an excellent point that, frankly, I had failed to consider with regard to the amendments thereto, and a reading, you know, through a kind of a clean set of eyes that the public school code of 1949, the multiple amendments that followed most recently, 1964, the amendments thereto might frankly apply to those amendments that were already in place, that have already been effectuated at the time the contract was signed. That said, and that's not the position we took in our brief, the position we take is the amendments thereto can apply to, frankly, any amendment that the legislature effectuates what, or those that would violate a contracting party's constitutional rights. For example, the contract, the tenure contract that's in the record and the form tenure contract. But even amendments that occur after they sign the contract? Well, as long as they do not infringe upon or affect the central undertaking of the contract. This is a tenure contract. The whole point of the contract is to establish tenure for the teachers after they have the three years of work. There are also a number of elements in the contract that are more incidental. For example, the contracts provide a structure for notice of furlough or the appeal process, the number of days you have to provide your written notice, or the manner in which that notice be provided. Should the legislature modify those or used to be written notice, but that's old language. Now you may email your notice. Should those amendments, the legislature choose to amend those. I don't think that we have an argument or would, it wouldn't infringe upon, it wouldn't implicate the contracts clause. It wouldn't infringe upon the constitutional rights of the contracting parties because those amendments would not implicate the central undertaking of the contract, which is of course, a requisite. Let's go to the other extreme. Let's suppose the legislature passed and the governor signed a law that eliminated tenure. What would happen to teachers who had contracts providing them tenure? Oh, that would be a problem, Judge Fischer. I'm glad you asked me the same question. A problem for who? That would be a problem for those trying to defend that would clearly, that wouldn't just affect the central undertaking of the contract. That would take the contracts and rip them up. Because these contracts are qualified or there is a component of legislative grace, to my earlier point, does not invalidate the contracts at the whim of the legislature. And that's effectively what this application, this retroactive application of Act 55 is approaching. I mean, Judge Fischer, your example is the natural extension. It's the most extreme. The example I gave where it would be permissible is on the other side of that spectrum. And where we find ourselves now on the continuum is gravitationally being pulled toward the extreme posed by your honor. And that's, it's tricky ground. And that's why it's so important to look at the nature of these contracts, why they exist, what the point is, and what expectations of the contracting parties may have. Just because this contract wouldn't exist but for the contracting school code doesn't make it any less relevant that the factors for inducement and the expectations and anticipations of the teachers who sign those contracts. Okay, I see your time is up. I did want to ask you, did you get a look at at Lori Burdette? I did, I did, your honor. And, and I don't, let me be specific. Paragraphs 10 and 11 of the complaint alleged that she's been employed by the district since September 2015. And they also say that she achieved tenure after three years of service. That to me would be 2018. And of course, the amendment here we're talking about is 2017. Um, so I just, just a point. No, no, that's a very good point, your honor. And I can only post and I, there are only two, um, possible, uh, uh, possible scenarios we have here. One, it's, it's a, it's a typo. One of those dates is, uh, the date of the contract being signed as a typo and it is incorrect in the complaint. If that's the case, I sincerely apologize. Or, um, the, as you suggested, maybe the case Ms. Burdette's claim, um, uh, may, may stand on rocky ground. Just, all right. Well, look, maybe, maybe you can just deal with that in a letter and we'll let your adversary respond to it. But I mean, if it's, if, if that's all true, it seems to me, that's another basis that she, I mean, a basis that she would fail to state a claim. So maybe you could just deal with that again, um, complaint paragraphs 10 and 11. And, um, and of course, I think we all agree that Act 55 was passed in 2017. Maybe you could just deal with that in writing and then your adversary could, let's go with, um, because I know the clerk will follow up. Let's go, uh, with, uh, uh, five pages or less. Uh, and if you could get back to us within, say, uh, a week, seven days, and your adversary has the same amount of time and we get an additional week. Okay. Uh, thank you, Ron. I appreciate the opportunity. Sure. And, uh, Judges Porter and Fisher, do you have any other questions you'd like to ask? No. Okay. Judge Fisher? No, I have none. Thank you. Okay. Thank you. All right. Well, we'll take the case under advisement. We want to thank counsel for their excellent briefing and excellent arguments today in these kind of odd circumstances. Uh, we really do appreciate the excellent work you did. Um, and, uh, we'll ask the court to, uh, uh, this particular argument. All right. Thank you.